**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDREA AYALA, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>CASELY, INC.<br>Defendant. | Civil Action No.<br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Andrea Ayala ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action complaint against Defendant Casely, Inc. (the "Defendant" or "Casely"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Casely Power Pods 5000mAh portable MagSafe wireless power banks, Model E33A (the "Casely Power Bank" or the "Affected Product"). The Affected Product is the subject of a recall announced by the U.S. Consumer Product Safety Commission due to a defect in the lithium-ion battery that can overheat, expand, catch fire, or explode, posing serious risks of fire, burn injuries, and death to consumers.

2. Defendant sold the Casely Power Pods 5000mAh portable MagSafe wireless power banks, Model E33A, through its website and third-party retailers, including Amazon and other e-commerce platforms, from approximately March 2022 through September 2024 for between $30 and $70.[1]

[1] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards,* CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards (last visited Apr. 23, 2026).

3. Plaintiff and other consumers had a reasonable expectation that the Affected Product would not overheat, ignite, catch fire, or otherwise pose a danger to their person or property.

4. Defendant similarly represents that its Power Pod products are designed with safety and reliability in mind. On its website, Casely emphasizes that its power pods are built using "cutting-edge technology" and are "exceptionally durable," while also stating that its chargers are designed to provide "complete protection" for users and their devices during charging. Defendant further promotes its products as dependable, portable charging solutions intended for everyday consumer use, assuring users that its power pods are suitable for safe, convenient, and continuous operation across a wide range of compatible devices. These representations convey to reasonable consumers that the product incorporates adequate safety mechanisms to prevent overheating, malfunction, or fire during ordinary use.[2]




*Figure 1 - Defendant's website (getcasely.com) advertising its "Power Pod" portable wireless power bank product line*

[2] *Power Pod - MagSafe Battery Pack*, CASELY, https://www.getcasely.com/collections/power-pods (last visited Apr. 23, 2026).

5. Defendant advertises its Power Pod products as convenient, portable wireless charging solutions designed for everyday consumer use. On its website and product pages, Defendant promotes its power pods as enabling consumers to keep their devices charged on the go, emphasizing ease of use, portability, and reliability. Despite these representations, the Affected Product contained a defect in its lithium-ion battery that could cause it to overheat, expand, or catch fire, posing serious safety risks to consumers.

6. Those representations about safety were false and misleading, and the Affected Product, by Defendant's own admission, is not safe.

7. On April 16, 2026, the U.S. Consumer Product Safety Commission and Defendant reannounced the recall of Casely Power Pods 5000mAh portable MagSafe wireless phone chargers, model E33A, covering approximately 429,200 units. The renewed recall warned that the lithium-ion batteries in the power banks can overheat and ignite, creating a risk of serious injury or death from fire and burn hazards. Defendant had previously recalled the same product in April 2025, after receiving 51 consumer reports of the battery overheating, expanding, or catching fire, including six minor burn injuries. Since that recall, CPSC reported 28 additional consumer reports involving overheating, expansion, or fire, including incidents associated with one fatality and one serious incident aboard an airplane. The renewed recall instructs consumers to immediately stop using the product, submit photographs through Defendant's recall process, and obtain a free replacement. [3]

8. The recall announced by Defendant applies to a single model, the Casely Power Pods 5000mAh portable MagSafe wireless power bank, Model E33A, and does not identify

[3] *Casely Reannounces Recall of Wireless Portable Power Banks Due to Risk of Serious Injury or Death from Fire and Burn Hazards; One Fatality Reported After 2025 Recall*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Casely-Reannounces-Recall-of-Wireless-Portable-Power-Banks-Due-to-Risk-of-Serious-Injury-or-Death-from-Fire-and-Burn-Hazards-One-Fatality-Reported-After-2025-Recall (last visited May 21, 2026).

additional models. [4]

9. Accordingly, Plaintiff brings this action individually and on behalf of the Nationwide Class and California Subclass, as applicable, to recover damages, restitution, injunctive and equitable relief, attorneys' fees and costs where authorized by law, and all other relief available for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; (iv) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; (v) unjust enrichment; (vi) negligent design; (vii) negligent failure to warn; and (viii) negligence.

## PARTIES

10. Plaintiff Andrea Ayala is a resident and citizen of Pomona, California.

11. In or around 2024, Plaintiff Ayala purchased a Model E33A Casely Power Pod portable wireless power bank for $77.19 through an online retailer.

12. In purchasing the Casely Power Pod, Plaintiff Ayala sought a product fit for its intended and ordinary use as a safe, reliable portable charging device and would not have purchased it, or would have paid less for it, had Defendant disclosed the defect in the lithium-ion battery and the associated safety risks, including overheating, fire, and burn hazards.

13. Defendant's omissions and misrepresentations caused the Affected Product to be sold at an artificially inflated price premium, which Plaintiff Ayala paid.

14. Plaintiff Ayala later received notice of the recall of the Affected Product, which further confirmed the safety risks associated with its use. At the time Plaintiff Ayala purchased the Affected Product, she was unaware that it contained a lithium-ion battery defect that could cause overheating, fire, or burn hazards during ordinary use. Plaintiff Ayala learned of the defect only

---

[4] *Id.*

after the recall was announced.

15. As a result of Defendant's conduct, Plaintiff Ayala suffered economic loss, including the difference between the amount she paid and the value of the Affected Product as received.

16. Defendant Casely, Inc. is a consumer electronics and accessories company that designs, markets, and sells portable charging products and mobile accessories, including its Power Pod wireless power banks. Upon information and belief, Casely, Inc. is a New York corporation with its principal place of business in Brooklyn, New York, from which it directs and controls the marketing, distribution, and sale of its products throughout the United States.[5]

17. Defendant created and/or authorized the false and misleading advertising and labeling of the Affected Product. Defendant's conduct as alleged herein was part of its regular business operations involving the design, marketing, distribution, and sale of consumer charging products throughout the United States, including the Affected Product.

## **JURISDICTION AND VENUE**

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class Member is a citizen of a state different from the Defendant.

19. This Court has personal jurisdiction over Defendant Casely because Casely is at home in New York. The U.S. Consumer Product Safety Commission identifies Casely as being located in Brooklyn, New York, and Casely conducts business from this State. Defendant is therefore subject to general personal jurisdiction in New York. This Court also has specific personal jurisdiction because Defendant purposefully marketed, advertised, distributed, and sold

[5] *See, Hi, We're Casely*, CASELY, https://www.getcasely.com/pages/about-us (last visited Apr. 23, 2026).

the Affected Product to consumers in New York. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the distribution of the Affected Product to consumers within this District. Furthermore, Defendant resides in this District for venue purposes as its principal place of business is located in Brooklyn, New York.

## FACTUAL ALLEGATIONS

### I. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Product

20. Defendant manufactured, distributed, marketed, and sold the Affected Product. The Affected Product was specifically marketed and represented as a safe, reliable portable power bank intended for everyday consumer use, including charging mobile devices.

21. Defendant engaged in marketing efforts to persuade consumers of the safety and reliability of the Affected Product. Defendant advertised and represented that the Affected Product was a portable wireless power bank suitable for everyday consumer use, including charging personal electronic devices. Despite these representations, the Affected Product contained a defect in its lithium-ion battery that could cause it to overheat, expand, catch fire, or explode, posing serious risks of injury to consumers.

22. Defendant utilized third parties, including Amazon and other e-commerce websites, to help distribute, market, and sell the Affected Product.[6]

23. Upon information and belief, consumer complaints submitted to the U.S. Consumer Product Safety Commission publicly available SaferProducts.gov database further demonstrate that the Affected Product is dangerous and defective. For example, in Report No. 5232941, a consumer reported that the Casely Power Pod (Model E33A) overheated during normal use,

---

[6] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards (last visited Apr. 23, 2026).

creating a risk of fire and injury. Such reports corroborate Defendant's admission in the recall that the Affected Product's lithium-ion battery can overheat, expand, or ignite during foreseeable use.[7]




*Figure 2 - Incident report from the U.S. Consumer Product Safety Commission SaferProducts.gov database regarding the Casely Power Pod, Model E33A. The consumer reported that the device "gets super-hot—too hot to hold" during normal use.*

## II. <u>Defendant's Use of Unsafe Lithium-Ion Battery Cells In The Affected Product.</u>

24. Defendant uses lithium-ion battery cells in the Affected Product.

25. Lithium-ion cells produce power by shuttling lithium ions from the anode to the cathode through an electrolyte, while electrons move through the external circuit to run the device.[8]

26. Thermal runaway is the principal safety hazard with lithium-ion batteries: once a cell generates heat faster than it can dissipate it, temperature rises precipitously, exothermic reactions accelerate, and the self-sustaining cycle can end in venting, fire, or explosion.[9]

27. Explosions from lithium-ion cell batteries are common. Vistra's Moss Landing battery-storage plant ignited on January 17, 2025, prompting 1,500 evacuations and renewed

---

[7] *Incident Report Details*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5232941 (last visited Apr. 23, 2026).

[8] *What Is a Lithium-Ion Battery and How Does It Work?*, UNIV. OF WASH. CLEAN ENERGY INST., https://www.cei.washington.edu/research/energy-storage/lithium-ion-battery/ (last visited May 21, 2026).

[9] *Lithium-Ion Battery Fires and Fire Protection*, NATIONAL FIRE SPRINKLER ASSOC., (Jan. 12, 2023) https://nfsa.org/2023/01/12/lithium-ion-battery-fires/ (last visited May 21, 2026).

scrutiny of thermal-runaway risks.[10]

28. In 2024 alone, New York City logged six lithium-battery fire deaths, with 277 injuries.[11] These known characteristics of lithium-ion battery technology make thermal management, quality control, and adequate warnings central safety considerations for products such as the Affected Product.



*Figure 3 - A fire in a truck caused by a Lithium-ion battery[12]*

**III. <u>Defendant's False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Product</u>**

29. Consumers looking to battery power bank options are faced with various choices and features, including whether to pay more for a battery power bank with safety features or less without safety features.[13]

---

[10] Robert Mackey, *Fire Reignites at California Battery Plant After Evacuations Amid Toxic Smoke*, THE GUARDIAN (Jan. 17, 2025), https://www.theguardian.com/us-news/2025/jan/17/california-battery-plant-fire-monterey (last visited May 21, 2026).

[11] Giulia Heyward, *FDNY Reports 67% Drop in Lithium-Ion Battery Deaths in 2024*, GOTHAMIST (Jan. 8, 2025), https://gothamist.com/news/fdny-reports-67-drop-in-lithium-ion-battery-deaths-in-2024 (last visited May 21, 2026).

[12] Emily Baker, *Lithium-ion batteries caused more than 1,000 fires during the past year in Australia,* ABC NEWS (Austl.) (Mar. 13, 2024), https://www.abc.net.au/news/2024-03-13/lithium-ion-fires-recycling-plants-trucks-vapes-exploding/103582110 (last visited May 21, 2026).

[13] Matt Stevens, *Killer chargers, travel adaptors and power banks rife on online marketplaces*, WHICH? (Sept. 1, 2019) https://www.which.co.uk/news/article/killer-chargers-travel-adaptors-and-power-banks-rife-on-online-marketplaces-aJtUU8K0Mfyx (last visited May 21, 2026).

30. Defendant advertised and emphasized the convenience, reliability, and everyday usability of its portable wireless power banks. Defendant represented on its website and in product listings that the Affected Product was designed to provide a convenient, cable-free charging solution for consumers on the go, including through social media advertisements explicitly depicting the product's use inside of bags and backpacks.[14] Despite these representations, the Affected Product contained a defect in its lithium-ion battery that could cause it to overheat, expand, or catch fire, posing serious safety risks to consumers.

31. Third-party testers of products used to power electronic devices confirm that "Online marketplaces that list cheap and unsafe electrical products sold by unknown brands are putting people at risk. These products might be cheap, but our testing shows they have the potential to cause serious damage or injury, including electric shocks and fires."[15]

32. Unlike generic power banks that prioritize function over form, Defendant deliberately marketed its Power Pod as a sleek, compact, and aesthetically appealing MagSafe-compatible charging solution to distinguish itself in a crowded marketplace. As observed in independent reviews such as ZDNET, many competing battery packs are commonly perceived as bulky and "brick-like," making them less desirable for everyday portable use. By contrast, Defendant capitalized on consumer demand for a slimmer, more stylish alternative, thereby commanding a price premium and fostering the perception that its product offered superior design, usability, and overall quality. However, despite these representations and its premium positioning,

[14] *See* add a pop of color to , TIKTOK, (Sept. 9, 2023), https://www.tiktok.com/@get.casely/video/7275389650456431914 (last visited May 21, 2026) (showing the Power Pod being attached to a phone and placed inside a backpack as a "school essential"); *see also* Video posted by get.casely (@get.casely), TIKTOK, https://www.tiktok.com/@get.casely/video/7443907373665717550 (last visited May 21, 2026) (depicting a Power Pod being placed into a tote bag while actively charging). These advertisements remain active as of May 18, 2026, despite Casely's updated "Important Safety Instructions" which now warns that the product "should not be operated in an enclosed, unventilated space such as a carrying bag, pocket, purse, car or bedding." Power Pod Important Safety Instructions, CASELY "Safety Instructions" https://support.getcasely.com/product-safety/power-pod-important-safety-instructions (last accessed May 21, 2026).

[15] *Stevens, supra.*

the Affected Product was not safer or more reliable than lower-cost alternatives and, in fact, contained a dangerous defect in its lithium-ion battery that could overheat, expand, or catch fire, directly undermining the very qualities Defendant used to market and sell the Affected Product.[16]

33. Defendant positioned itself in the marketplace as a premium and lifestyle-oriented alternative to the flood of low-cost, unbranded battery power banks sold by unknown sellers online. Through its branding, product design, and marketing, Defendant emphasized aesthetics, portability, and everyday usability to differentiate its Power Pod products from less expensive competitors. This messaging was central to its appeal and allowed Defendant to command a price premium across major e-commerce platforms, including Amazon, despite offering a product that was not safer or more reliable than lower-cost alternatives and, in fact, contained a dangerous lithium-ion battery defect, all while continuing to represent to the public that the products are built with "safety in mind" to provide "complete protection."[17]

34. Consumers reasonably relied on Defendant's representations that its Power Pod products were reliable, suitable for everyday use, and designed for safe, portable charging of personal electronic devices. Through its branding, product presentation, and marketing across its website and third-party platforms, Defendant reinforced the perception that the Affected Product was a dependable and consumer-safe charging solution. These representations were material to consumers' purchasing decisions and contributed to their willingness to pay a price premium for the Affected Product.

35. As a result, consumers, including Plaintiff, were induced to pay more for the Affected Product based on Defendant's representations of quality, reliability, and everyday

---

[16] *See*, *This MagSafe pack is equal parts stylish and efficient - but I have one issue*, ZDNET, https://www.zdnet.com/article/finally-a-magsafe-battery-pack-that-doesnt-look-like-a-brick-and-it-charges-quick-too/ (last visited May 21, 2026).

[17] *See Power Pod MagSafe Battery Pack*, CASELY, https://www.getcasely.com/collections/power-pods (last visited May 21, 2026). On its official "Power Pod" collection page, Defendant warrants that it has "built these wireless chargers with safety in mind providing complete protection for you and your devices while charging."

usability. Defendant's conduct shaped consumer decision-making by creating the false impression that its Power Pod products were dependable and safe for routine use, when in fact the Affected Product was not safe, as confirmed by the nationwide recall implemented due to serious safety risks, including overheating, fire, and burn hazards associated with the lithium-ion battery.

## IV. Consumers Have Been Harmed By Defendant's False and Misleading Representations

36. Defendant knew, or should have known, that the advertising and labeling claims made regarding the Affected Product were false and misleading.

37. Defendant sold the Affected Product that was ultimately subject to a nationwide recall due to serious safety risks associated with its lithium-ion battery.

38. Defendant's recall of the Affected Product was necessitated by a defect in its lithium-ion battery, which can overheat, expand, or catch fire, posing a serious risk of fire and burn injuries to consumers.[18]

39. The recall of the Affected Product further confirms that the lithium-ion battery defect can cause the device to overheat, expand, or catch fire during normal use, posing a significant risk of fire and burn injuries to consumers.[19]

40. Defendant's recall of the Affected Product was not a one-time corrective action, but was later reannounced after additional incidents of overheating, fire, and injury continued to occur. Following the initial recall in April 2025, numerous additional reports, including incidents resulting in serious injury and death, were reported, prompting a reannouncement of the recall. This sequence of events demonstrates that the defect in the Affected Product was severe and

---

[18] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards (last visited May 21, 2026).

[19] *Id.*

widespread, and that it was not adequately addressed at the time of the initial recall.[20]

41. Defendant knew, or, at a minimum, should have known, that the advertising for the Affected Product misrepresented material facts concerning its safety, given the defect in its lithium-ion battery and the resulting risk of overheating, fire, and burn injuries.

42. Defendant knew, or, at a minimum, should have known, that the representations and statements made through its labeling, advertising, and marketing would mislead consumers into purchasing the Affected Product instead of lower-priced alternatives based on the false belief that the Affected Product was safe, reliable, and suitable for everyday use.

43. Had Defendant disclosed the material safety risks associated with its Power Pod products, including the risk of lithium-ion battery failure, overheating, and fire, Plaintiff would not have purchased the product, or would have paid significantly less for it, had the product been truthfully marketed and labeled. Defendant's subsequent recall and reannouncement confirm that the safety risks associated with the Affected Product materialized in real-world consumer use.

## V. <u>The Affected Product Has Been the Subject of A Nationwide Recall</u>

44. Defendant's own recall history confirms the existence and seriousness of the defect alleged herein. On or around April 2025, a recall was announced for approximately 429,000 Casely Power Pods 5000mAh portable wireless power banks (Model E33A). The recall followed at least 51 reported incidents involving overheating, swelling, or fire, including multiple reports of burn injuries. The recall was later reannounced after additional incidents were reported, including further overheating and fire events, and at least one reported fatality. The U.S. Consumer Product Safety Commission concluded that the lithium-ion batteries in these units posed a significant risk

---

[20] *See*, *Important Recall Safety Notice*, CASELY, https://www.getcasely.com/pages/2025-recall (last visited May 21, 2026).

of overheating, fire, and burn hazards.[21]

45. Defendant continues to market and promote its Power Pod products as reliable, convenient, and suitable for everyday use, even after the recall of the Affected Product and reports of overheating, fire, and burn hazards associated with its lithium-ion battery, thereby reinforcing misleading perceptions of safety among consumers.[22]

46. Defendant capitalized on consumers' trust in portable lithium-ion charging devices by promoting its Power Pod products as dependable for everyday use, while omitting that such devices could pose serious risks of overheating, fire, and burn injuries. This conduct exploited consumers' reasonable belief that products of this kind are safe for routine use and do not present dangerous battery-related hazards.

47. Although Defendant announced a recall, the relief offered to consumers does not fully address the economic injury alleged here. Defendant has offered a remedy to consumers who purchased the Affected Product, requiring submission of photographic proof of ownership and disposal of the recalled product. In exchange, Defendant offers a replacement product or a store credit. These requirements impose unnecessary burdens on consumers and fail to adequately compensate them for purchasing a defective product that poses serious safety risks, including overheating, fire, and burn hazards.

48. Defendant requires consumers to complete a multi-step verification process to obtain a remedy for the Affected Product, including submitting photographs of the product and evidence of its disposal in accordance with recall instructions. These requirements are cumbersome

[21] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards (last visited May 21, 2026).

[22] *See Power Pod MagSafe Battery Pack*, CASELY, https://www.getcasely.com/collections/power-pods (last visited May 21, 2026). Defendant's active website copy further reinforces these misleading perceptions by stating the Power Pods "can easily fit right into your pocket or a compartment of your bag" and that a consumer "might forget it's even there up until you need it"—representations that are verifiably dangerous given the product's propensity for thermal runaway and fire when used in unventilated spaces.

and create unnecessary barriers for consumers seeking relief for a defective product that poses serious safety risks.

49. The recall provides insufficient reimbursement for the premium prices consumers paid in reliance on Defendant's misrepresentations, as many consumers may have already discarded the Affected Product due to its dangerous nature and may not wish to receive a replacement product or store credit from a company they no longer trust. Accordingly, the offered remedy fails to adequately compensate consumers for their economic losses and the serious safety risks posed by the defective product. Plaintiff seeks a full cash refund as a remedy.

## TOLLING

50. Defendant's conduct also delayed consumers' discovery of their claims. The statutes of limitations applicable to Plaintiff's and the Classes' claims were tolled by Defendant's conduct, including its failure to disclose the defect, and Plaintiff's and the Classes' delayed discovery of their claims.

51. As alleged herein, Plaintiff and members of the Classes did not know, and could not have known, that the Affected Product was dangerous due to the undisclosed defect in its lithium-ion battery. Plaintiff and members of the Classes could not have discovered Defendant's unlawful conduct with reasonable diligence.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Product in the United States for personal/household use within any applicable limitation period (the "Nationwide Class").

53. Plaintiff brings this action individually and on behalf of the following California subclass:

> All persons who purchased one or more of Defendant's Affected Product in the state of California for personal/household use within any applicable limitation period (the "California Subclass").

54. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant have a controlling interest and its current or former employees, officers, and directors.

55. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of hundreds of thousands of consumers. The precise number of Class Members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

56. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. The common and legal questions include, but are not

limited to, the following:

a. Whether the marketing, advertising, packaging, and labeling for the Affected Product were false, misleading, and/or deceptive;

b. Whether Defendant breached its express warranties;

c. Whether Defendant breached its implied warranties of merchantability

d. Whether Defendant violated the state consumer protection statutes alleged herein;

e. Whether Defendant was unjustly enriched; and

f. The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

57. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff's, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

58. Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because her interests do not conflict with the interests of the members of the Class, and she has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

59. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and

expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

60. Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff and the Nationwide Class)

61. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

62. Defendant is and was at all relevant times a merchant engaged in the business of designing, manufacturing, marketing, and selling the Affected Product.

63. Defendant marketed and sold the Affected Product in the stream of commerce with the intent that the Affected Product would be purchased by Plaintiff and the Nationwide Class.

64. In connection with the sale of the Affected Product, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, issued written warranties by representing the Affected Product's safety claims. These were affirmations of fact about the products (i.e., a

description of the effects) and a promise relating to the goods.

65. These representations — made through Defendant's website, social media accounts, advertisements, and on the product's packaging and labels — constituted affirmations of fact and promises relating to the goods.

66. Specifically, Defendant expressly warranted that the Affected Product was "safe," "dependable," and fit for its intended use as a portable power bank.[23]

67. These affirmations of safety and quality became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

68. In fact, the Affected Product does not conform to the above-referenced representations because, as alleged in detail above and just by way of example, they overheat and can potentially explode, despite a promise that they would not through its safety system. Thus, the express warranties were breached.

69. As a direct and proximate cause of Defendant's breach of express warranties, Plaintiff and the Class Members have been injured and harmed because (a) they would not have purchased the Affected Product on the same terms, if at all, if they had known that the product was not safe; and (b) the Affected Product does not have the characteristics, uses, benefits, or qualities as promised.

---

[23] *Power Pod MagSafe Battery Pack*, CASELY, https://www.getcasely.com/collections/power-pods (last visited May 21, 2026) (stating that Defendant has "built these wireless chargers with safety in mind providing complete protection for you and your devices while charging" and that "… you can easily take them anywhere. They'll fit right into your pocket or bag, ready for you to whip out whenever you need them.").

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On behalf of Plaintiff and the Nationwide Class)**

70. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

71. By operation of law, a warranty that the goods shall be merchantable is implied in a contract for their sale when the seller is a merchant with respect to goods of that kind.

72. To be merchantable, goods must be, at a minimum, fit for the ordinary purposes for which such goods are used.

73. Defendant is a merchant with respect to the Affected Products, and an implied warranty of merchantability arose as part of the sale of these goods to Plaintiff and Class Members.

74. Defendant impliedly warranted that the Affected Product was of merchantable quality and safe for use as a portable power bank.

75. Specifically, Defendant expressly warranted that the Affected Product was "safe," "dependable," and fit for its intended use as a portable power bank.[24]

76. Safety is an inherent requirement of merchantability; a product that is unreasonably dangerous for its ordinary use is unmerchantable as a matter of law.

77. Defendant breached the implied warranty of merchantability because the Affected Product is not fit for its ordinary purpose; the latent battery defect renders the device a fire and burn hazard that can spontaneously ignite or explode.

78. The Affected Product's propensity to overheat during ordinary use — a fact confirmed by numerous consumer reports and a nationwide recall — renders the product worthless and unsuitable for the everyday use for which it was marketed.

79. Plaintiff and Class Members are the intended beneficiaries of Defendant's implied

---

[24] *Id.*

warranties, as Defendant manufactured and marketed the products specifically for sale to ultimate consumers.

80. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered economic injury and are entitled to damages, including a full cash refund and restitution.

**COUNT III**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.**
**(On behalf of the Plaintiff and the California Subclass)**

81. Plaintiff and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82. Defendant's conduct as alleged herein violates California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., which makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning…personal property…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

83. The Affected Products at issue are "personal property" within the meaning of the FAL.

84. The Affected Product's packaging omitted any warnings or disclosures regarding the potential for the lithium-ion batteries in the Affected Products to overheat, expand, ignite, or catch fire, contrary to reasonable consumer expectations.

85. Any express or implied representation, material omission of information, or failure to correct a past material misrepresentation or omission regarding the safety of the Affected Products is a "statement[] concerning personal property" within the meaning of the FAL.

86. Defendant violated the FAL by making, disseminating, and causing to be made or disseminated to the public statements about the safety of the Affected Products that were "untrue or misleading" within the meaning of the FAL.

87. Defendant failed to disclose accurate information regarding the Affected Products generally. Defendant made, disseminated, or caused to be made or disseminated untrue or misleading public statements about the Affected Product in numerous forums, including but not limited to Defendant's website. Defendant falsely stated that the Affected Product was safe for use, when in fact they omitted the known risk.

88. Defendant knew, or by the exercise of reasonable care, should have known that each of those statements was untrue, misleading, and likely to deceive the public at or near the time it was made or disseminated, and at all times thereafter.

89. Defendant's marketing material fails to disclose details of the Affected Product and that its advertising communicated falsehoods, including that consumers would be safe.

90. As a result of Defendant's FAL violations and the harm caused thereby, Plaintiff and the California Subclass Members are entitled to and seek (a) injunctive relief to protect the consuming public by prohibiting Defendant from engaging in its past and ongoing acts, omissions, and conduct that violate the FAL; (b) restitution of the full value of all monies and other consideration that Plaintiff and California Subclass Members paid Defendant for the purchase of the Affected Products, including any reduced value of Plaintiff 'and California Subclass Members' purchase, and disgorgement of the profits Defendant derived from its wrongful conduct; and (c) an award of reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION**
**CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**
**(On behalf of the Plaintiff and the California Subclass)**

91. Plaintiff and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

92. Defendant's conduct as alleged herein violates California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., which prohibits any "unlawful, unfair or fraudulent business act or practice."

93. Plaintiff and the California Subclass have standing because they have suffered "injury in fact" and lost money (the purchase price of the Affected Product) as a result of Defendant's unfair competition.

94. Defendant's conduct is unlawful because it violates the California False Advertising Law and the implied warranty of merchantability. These violations serve as "predicate acts" that are independently actionable under the UCL.

95. Defendant's labeling and marketing of the Affected Product as "safe" and fit for "on-the-go" use were likely to deceive reasonable consumers.[25] Defendant knew or should have known that the product contained a latent defect in its lithium-ion battery that posed an unreasonable fire hazard.

96. Defendant's conduct is unfair because the gravity of the harm to consumers (exposure to fire, burns, and even death) far outweighs any possible utility of Defendant's conduct. Furthermore, Defendant's refusal to provide a full cash refund for a known lethal hazard and its imposition of cumbersome verification barriers to participating in the recall are oppressive and unscrupulous.

[25] *Id.* (stating "[o]ur power pods are the ideal solution for life on the go . . .").

97. Plaintiff and the Subclass lack an adequate remedy at law because the equitable relief sought—including restitution of the premium paid for a worthless and dangerous product and injunctive relief to ensure a safe recall process—provides a more certain and efficient remedy than mere damages.

98. Plaintiff and Subclass Members seek (a) restitution of all monies paid for the Affected Products; (b) disgorgement of Defendant's ill-gotten profits; and (c) an injunction preventing Defendant from continuing these deceptive and unfair practices.

**COUNT V**
**UNJUST ENRICHMENT**
**(On behalf of the Plaintiff and the Nationwide Class)**

99. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100. Plaintiff and the Nationwide Class Members conferred benefits upon Defendant. Plaintiff and Nationwide Class Members paid money for Defendant's Affected Product that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Product was unsafe or could be susceptible to overheating.

101. Defendant unjustly retained the benefits conferred upon Defendant by Plaintiff and the Nationwide Class Members.

102. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Product was unsafe and could not perform as advertised. If Plaintiff and Nationwide Class Members had known the true nature of Defendant's Affected Product, they would not have purchased the products. Plaintiff and the Nationwide Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

103. Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

**COUNT VI**
**NEGLIGENT DESIGN**
**(On behalf of the Plaintiff, individually, and the Nationwide Class)**

104. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105. Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

106. The Affected Products' compact, enclosed lithium-ion battery design and intended portable use invite consumers to carry, charge, and use the devices in close proximity to their bodies, personal belongings, and household environments during ordinary use. During charging or discharging, devices may generate heat, and, due to defects in battery cells or internal safeguards, they are prone to overheating and thermal runaway. Plaintiff alleges that this creates a danger zone in which power banks can ignite, explode, or emit flames, exposing consumers to the risk of fire and burn injuries without adequate warning.

107. Feasible, safer alternative designs were available at reasonable cost, including, but not limited to: (a) higher-quality or more stable lithium-ion battery cells with reduced risk of thermal runaway; (b) integrated thermal management systems, including temperature sensors and automatic shutoff mechanisms to prevent overheating; (c) improved internal separation and insulation to prevent short-circuiting; (d) enhanced manufacturing controls and battery testing protocols to detect defects prior to distribution; and (e) clear, prominent warning labels and instructions regarding overheating risks, safe charging practices, and proper storage and handling

of the device.

108. Defendant breached its duty by adopting, manufacturing, and selling the Affected Products with the defective design described herein without proper safeguards.

109. This defective design was a substantial factor in causing the overheating and thermal runaway incidents alleged by Plaintiff and the putative Class Members, resulting in the lithium-ion batteries within the Affected Products igniting, exploding, or emitting flames during ordinary use and creating a dangerous risk of fire, burn injuries, and property damage.

110. Defendant had actual and/or constructive knowledge of the defect prior to the recall announcement, including through consumer complaints, incident reports, warranty claims, and internal or third-party testing. Despite this knowledge, Defendant continued to market and sell the Affected Products without adequate warnings or design modifications.

111. Plaintiff and the Nationwide Class suffered damages and related losses, proximately caused by Defendant's negligent design.

112. Plaintiff and the Nationwide Class suffered economic injury, proximately caused by Defendant's negligent design.

## COUNT VII
## NEGLIGENT FAILURE TO WARN
## (On behalf of the Plaintiff, individually, and the Nationwide Class)

113. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

114. Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and, when appropriate, to provide post-sale warnings as knowledge of hazards emerged.

115. The risk that the lithium-ion batteries within the Affected Products could overheat and enter thermal runaway during ordinary charging, storage, or use, resulting in ignition, fire, or

explosion, was not open and obvious to ordinary consumers at the time of purchase, particularly where the products were marketed as safe, portable charging devices for everyday use.

116. Defendant knew or, in the exercise of reasonable care, should have known of the hazard through pre-market testing, consumer complaints, warranty claims, incident reports, and product-use data. Post-sale, Defendant received additional reports and complaints concerning overheating and fire risks, yet failed to timely issue adequate warnings, instructions, or interim safety guidance.

117. Defendant breached its duties by omitting clear pre-sale warnings about the risk that the lithium-ion batteries in the Affected Products could overheat, ignite, or enter thermal runaway, and by failing to timely provide adequate warnings, instructions, or a full and effective remedy sufficient to address the hazard posed by the Affected Products.

## COUNT VIII
## NEGLIGENCE
## (On behalf of the Plaintiff, individually, and the Nationwide Class)

118. Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119. Defendant owed Plaintiff and the Nationwide Class a duty to exercise reasonable care in the design, testing, manufacture, marketing, instructions, and warnings for its wireless portable power banks, including a continuing post-sale duty to take reasonable steps to warn consumers and mitigate the hazard once it knew or should have known that the lithium-ion batteries could overheat, ignite, or enter thermal runaway during ordinary use.

120. Defendant breached these duties by, among other things: (a) designing and manufacturing the Affected Products with lithium-ion batteries and internal components prone to overheating and thermal runaway during ordinary use; (b) failing to conduct adequate pre-market safety and reliability testing, or failing to act on such testing; (c) failing to provide adequate pre-

sale warnings and instructions regarding the risk of overheating, fire, or explosion during charging, storage, or use; and (d) failing, post-sale, to timely warn prior purchasers, issue adequate safety guidance, or implement prompt remedial measures after receiving consumer complaints, incident reports, and evidence of overheating and fire-related events.

121. The risk that the Affected Products could overheat, ignite, or enter thermal runaway during ordinary charging, storage, or use resulting in fire, burn injuries, or property damage was foreseeable to Defendant, and safer, feasible alternative designs and precautions were available at reasonable cost, including the use of higher-quality or more stable battery cells, integrated thermal management systems, improved internal insulation and separation to prevent short-circuiting, enhanced safety testing protocols, and clear, prominent warnings and instructions regarding safe use and handling.

122. Defendant's negligence was a substantial factor in causing the overheating and thermal runaway incidents and resulting fire, burn, and property damage hazards suffered by Plaintiff and the Nationwide Class during ordinary and intended use of the Affected Products. Such harm was a reasonably foreseeable consequence of the breaches alleged herein.

123. As a direct and proximate result, Plaintiff and the Nationwide Class suffered out-of-pocket losses, property damage, personal injuries, and a diminution in value.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Classes, prays for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Class, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and the Classes compensatory damages;

c. Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

d. For declaratory and equitable relief, including restitution and disgorgement;

e. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f. Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

g. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

h. Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

i. Awarding pre-judgment and post-judgment interest; and

j. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: May 21, 2026

**LEVI & KORSINSKY, LLP**

By: *<u>/s/ Mark S. Reich</u>*
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*